### RICHARDS *v*. MOORE et al.

(*Supreme Court, General Term, First Department.* April 17, 1891.)

1. STRIKING OUT TESTIMONY—EFFECT ON OTHER TESTIMONY OF SAME WITNESS.

In an action to establish a trust in favor of plaintiff in property theretofore transferred by plaintiff to defendant by a bill of sale absolute in form, the complaint alleged that the bill of sale was not delivered to defendant, but was delivered to one E., to be held by him for the purposes of the alleged trust, and that it (the bill of sale) came into the possession of defendant after the death of E. *Held*, that the striking out by the court of testimony as to the circumstances connected with the execution of the bill of sale, given by a witness who acted as counsel in the preparation and execution thereof, did not affect the further testimony given by such witness as to the delivery to E. of the bill of sale.

2. SAME—STATEMENT IN OPINION OF TRIAL COURT.

A statement in the opinion of the trial judge that certain portions of the testimony should be stricken out does not show that such portions actually were stricken out, in the absence of a decision signed by the judge ordering the same.

3. BILL OF SALE—CONSIDERATION.

A bill of sale voluntarily made by plaintiff to his mother, without the exercise on her part of any influence or the offer from her of any inducements, cannot be impeached by plaintiff on the ground that it was without consideration.

Appeal from special term, New York county.

Action by Pierre C. Richards against Mary H. Moore and George E. Moore to obtain a decree declaring that a bill of sale, absolute on its face, executed by the plaintiff to defendant Mary H. Moore, was not in fact such, but intended to create a trust for the benefit of the plaintiff. From a judgment dismissing the complaint, and from an order granting an extra allowance to defendants, plaintiff appeals.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Niel & Simpkins*, (*Charles S. Simpkins*, of counsel,) for appellant. *Woodward & Buckley*, (*Sidney S. Harris*, of counsel,) for respondents.

DANIELS, J. The plaintiff in 1874 was the owner of a recipe or secret formula for a medical compound known as "Dutton's Vegetable Discovery." On the 9th of April, 1875, he executed a bill of sale, absolute in form, by which, for the consideration of one dollar and other valuable considerations

to him paid by Mary H. Moore, wife of George H. Moore, the receipt of which was acknowledged, he bargained, sold, granted, and conveyed unto her, all and singular, his right, title, interest, property, and estate of every kind, nature, and discription, both legal and equitable, of, in, and to this vegetable discovery or proprietary medicine, together with the secret formula and recipe for compounding the same, with the full, free, absolute, and unrestricted right and license to manufacture and sell the same, and also all, each, and every trade-marks and copyrights appertaining to the business, and its goodwill, fixtures, and appurtenances, etc., to have and to hold unto herself, her executors, administrators, and assigns, forever. This bill of sale, it was alleged in his behalf, was not delivered to the vendee therein named, but was at the time of its date delivered to Edward C. Richards, a brother of the vendee in the bill, to be held by him during the life-time of the plaintiff, for the benefit of his wife and child, and until the latter should arrive at his majority, and only to be delivered to the vendee, Mary H. Moore, in case of the death of the plaintiff. And it was averred that this paper was found in the possession of the estate of Edward C. Richards after the time of his decease, in the year 1880, and that it was obtained in that manner by the husband of the defendant Mary H. Moore, and afterwards withheld from the plaintiff and appropriated to her use. The business which was carried on in the city of New York by the plaintiff for the manufacture and sale of this vegetable compound was placed in the possession and under the control of Robert G. Richards, an elder brother of the plaintiff, and moved from the city of New York to New Brunswick, in the state of New Jersey, where it was carried on by him, or under his authority, until his decease, in the year 1887. And after that it was alleged that the vendee in the bill of sale had transferred the same property to the defendant George E. Moore, her son, who wholly withheld it and its proceeds from the plaintiff. This action was brought to maintain the rights of the plaintiff as a beneficiary under the bill of sale, and to set aside the transfer made by the defendant Mary H. Moore, the vendee, to her son George E. Moore. The right of the plaintiff to this relief was controverted by the answer of those defendants, and the court at the trial concluded that the action had not been sustained by the evidence, and directed a judgment in favor of the defendants. And it is from that judgment that the main appeal has been taken.

The plaintiff, by his own evidence, as well as by the testimony of Mr. Secor, a witness examined in his behalf, and also by the testimony of another witness, Mr. Leete, gave evidence tending to establish the truth of the theory upon which the action had been commenced and was prosecuted. The testimony of the latter witness, however, proceeded no further than to repeat statements testified by him to have been made by Robert G. Richards while he was in charge of the business, containing admissions that the plaintiff was a partner in that business, and to instances in which moneys were sent from the business to the plaintiff. It did not go directly to the proof of any agreement by which the bill of sale to the defendant Mary H. Moore was to be held in trust for the plaintiff by Edward C. Richards, as that was alleged. But the testimony of the plaintiff himself, and of Mr. Secor, was directed to proof of this as a matter of fact. And they did testify that the object of the bill of sale to Mary H. Moore was to place the business in such a condition as to enable Robert G. Richards, who at the time was largely indebted and insolvent, to carry it on without danger from his creditors, and that the bill of sale was in fact placed in the possession of Edward C. Richards to be held by him in the manner already stated, and that he received and agreed so to hold it. This evidence, it is clear, tended to establish the right of the plaintiff to maintain this action, but it was met by proof on behalf of the defendants which tended to exhibit an entirely different state of facts. George H. Moore, the husband of the defendant Mary H. Moore, was appointed the executor of

the estate of Edward C. Richards, and testified that this bill of sale was not found by him among the papers of his deceased testator. And he testified further that he knew of the bill of sale being executed on the 9th of April, 1875, and that he and his wife, Mary H. Moore, were requested to go to the office of the attorney who drew the bill of sale to execute the papers, and that they went there, and that a paper was executed by himself and his wife which was a power of attorney to Robert G. Richards to carry on this business. And that paper was produced in evidence, executed by these two persons. It contained in its statement some evidence that this assignment or bill of sale was not delivered to Edward C. Richards, but had been delivered to the defendant Mary H. Moore, for the reason that it was stated therein that the business had been sold and assigned by the plaintiff to this defendant. The same witness testified that he knew that this bill of sale was at one time in the custody of his wife, although at the time of the execution of the power of attorney it had been left in the possession of the attorney who drew the papers. She herself, also, without having a distinct recollection of what had taken place, stated that she knew when she executed the power of attorney that the plaintiff had transferred this business to her, although she was unable to say whether the bill of sale had been in her possession, while the defendant George E. Moore testified that the papers had been either in his possession or the possession of his mother, the defendant Mary H. Moore, from about the time of the execution of the assignment until the time of the trial, which took place in October, 1889. And he added that they were never in the possession of Edward C. Richards, but were in his own possession within two weeks after the time when the assignment and power of attorney were executed. This evidence, directly in conflict as it was with that on the part of the plaintiff, presented a question of fact for the court to determine, whether the bill of sale or assignment had been delivered in trust in this manner to Edward C. Richards, or had in point of fact been left with the attorney to be handed over to the defendant Mary H. Moore, and by him afterwards passed into her possession. And the absolute language of the transfer to her, unqualified by any condition or obligation whatever, had a tendency to confirm the fact of the delivery of the instrument as that was found to be proved by the court. And so did the length of time during which the business was carried on by Robert G. Richards under her power of attorney, and the letters written by the plaintiff himself, as well as the claims finally put forth by him, which, at no time asserted the invalidity of the bill of sale. And this fact, having been in this manner found against the plaintiff, cannot upon this state of the evidence be disturbed upon an appeal.

It has been stated in the opinion of the judge presiding at the trial that he concluded to strike out so much of the testimony of Mr. Secor as regarded the circumstances under which the bill of sale was executed, and as to the conversations between him, the plaintiff, and Robert G. Richards. This conclusion is stated to have been reached upon the evidence of the plaintiff himself, showing that Mr. Secor was consulted by himself and his brother Robert G. Richards as a counsel concerning the preparation and delivery of this instrument. And the evidence of the plaintiff is very clearly to that effect, for he states and repeats that the advice of Mr. Secor, who was formerly the counsel of his brother, was asked as to these matters and given in response to the request which was made. And under the cases of *Bacon* v. *Frisbie*, 80 N. Y. 394, and *Root* v. *Wright*, 84 N. Y. 72, this conclusion of the presiding justice appears to have been warranted. But the striking out of so much of the evidence of the witness Secor, if that was in fact done, as related to these particular subjects, did not affect that given by him concerning the delivery of the bill of sale to Edward C. Richards to be held by him in trust. That does not appear to have been included within the statement in this manner

made by the justice. And, so far as the action is concerned, that was the only important evidence given by Mr. Secor, and was unconnected with the conversations stricken out, and tended to establish the plaintiff's right of action; for, as to the facts of the bill of sale or assignment being concluded upon and being drawn up by the attorney to whom the parties were recommended by Mr. Secor, there was no question whatever in the case, and striking out this evidence in no manner affected the ability of the plaintiff to maintain his action. That depended wholly upon the alleged delivery of the bill of sale to Edward C. Richards for the purposes and objects for which that was alleged by the plaintiff to have been made, and as to that the evidence of Secor necessarily remained in the case.

But another difficulty in the way of the plaintiff's objection to this determination of the justice is that it was not put in any form by which it can certainly be held by the court that even so much of the evidence as has been mentioned was stricken out or disregarded; for no decision was signed by the judge describing or directing, otherwise than the mere statement in his opinion, as to how much or what parts of the testimony of the witness Secor should be excluded from the case.

It has been urged in further support of the appeal that evidence of a legal consideration should have been given on behalf of the defendants to sustain this bill of sale as a disposition of the plaintiff's interest in this business to the defendant Mary H. Moore. She was his mother, but from none of the evidence does it appear that she participated in any arrangement with the plaintiff by which this bill of sale was to be made and delivered to or for her. It was, on the contrary, the voluntary act of the plaintiff himself, as he has described it in his testimony, primarily for the benefit of, and to give employment to, his brother. She exercised no influence over him, and offered no inducements to him to execute or deliver the instrument. But it was freely and voluntarily made and delivered, and no attempt has been made to impeach it by the allegations in the complaint, beyond the fact that it had been delivered to Edward C. Richards in trust, and after his decease obtained from his papers by his executor, the husband of this defendant Mary H. Moore, and in that manner placed under her authority and control. No case consequently has been disclosed by the complaint placing the plaintiff's right to the recovery of this instrument upon any other ground than the fact of its having been delivered in trust to Edward C. Richards, while the proof at the trial was such, in the judgment of the judge presiding, as to fail to establish that allegation. Prior to the execution of this bill of sale the plaintiff had made a transfer of an undivided half of the business and of this proprietary medicine to his brother Robert G. Richards, which was stated by himself, however, to have been overreached by the bill of sale now in controversy. But there was no satisfactory evidence in the case upon which such a conclusion could be adopted. And that left his brother Robert G. Richards really the owner of a one-half interest in this vegetable compound, and the recipe for manufacturing it, and also entitled, as the attorney for the defendant Mary H. Moore under her power of attorney, to represent her in the business so far as she had acquired interest in the compound through the bill of sale executed by the plaintiff to her. This, however, is not an important consideration in the case, for prior to his own decease Robert G. Richards by his will bequeathed his property to the defendant Mary H. Moore. And that after his decease, together with the bill of sale from the plaintiff, in any event created her the sole owner of this business and vegetable compound, with the right to manufacture and sell it. And after the decease of Robert G. Richards, leaving his estate in this manner, she transferred this business to the defendant George E. Moore, her son, and half-brother of the plaintiff in the action. And, as the case has been disposed of upon the conflicting proof

relating to the rights of these parties, that transfer seems to have been effectual in the way of vesting this defendant with this business, and the right to manufacture and sell this compound.

An affidavit was produced, in support of the motion for an additional allowance of costs, showing the recipe for making the vegetable compound to be of the value of about $40,000, which was amply sufficient to justify the allowance made of $350. The case appears to have been difficult and extraordinary, and justified the making of this order. Both this order, therefore, and the judgment, should be affirmed, with costs.